UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
TREMAYNE MARSHALL,
                                    Petitioner,

    -against-

ADA PEREZ,
                                    Respondent.
----------------------------------------------------------------x

MEMORANDUM & ORDER

16-CV-05720 (ENV)

VITALIANO, D.J.

      Proceeding *pro se* Tremayne Marshall filed this petition seeking a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254. Dkt. 1 ("Pet.").[1] For the reasons set forth below, the writ is denied and the petition is dismissed.

## Background

### Brooklyn Robberies

      Treymayne Marshall's convictions stem from two robberies in Brooklyn.[2] On December 13, 2010, at approximately 7:00 PM, Marshall and two other men approached Kashida St. Bernard on St. John's Place near Utica Avenue in Brooklyn. Respondent's Affidavit Dkt. 7 at 1. One of the men hit St. Bernard on the left side of her head. *Id.* St. Bernard observed a man with a gun on her left and petitioner on her right. One of the men took her purse and petitioner demanded that St. Bernard give him an envelope she was holding. *Id.* at 2. After St. Bernard refused to give up the envelope, petitioner and the other two men fled.

---

[1] All citations refer to ECF pagination, unless otherwise indicated.
[2] The Court recites the facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

Marshall would soon strike again. On December 15, 2010, at approximately 5:30 PM, Karlene Andrews was robbed while walking on St. Mark's Avenue in Brooklyn between Rochester Avenue and Buffalo Avenue, a few blocks from the location of the St. Bernard robbery. *Id.* Petitioner approached with two other men and demanded Andrews's property. *Id.* Marshall pointed a gun at Andrews and took her handbag before the men fled. *Id.* The next day, both St. Bernard and Andrews identified Marshall in a line-up. *Id.*

Petitioner was charged and indicted in King's County, with two counts each of robbery in the first degree, robbery in the second degree, robbery in the third degree, grand larceny in the fourth degree, and petit larceny. *Id.*

Trial and Post-Conviction Proceedings

Jury selection in King's County began on October 1, 2012. Before *voir dire* began, the Court told potential jurors that they were permitted to remove themselves from jury selection if they had a "hardship" that would prevent them from serving for the trial. (Respondent's Exhibit C, Dkt. 7-3 at 30.). During the *voir dire*, Marshall's counsel exercised a peremptory challenge but sought to withdraw that challenge almost immediately after exercising it. Pet. at 22; Dkt. 7-3 at 197-98. The trial court, however, refused to allow Marshall's counsel to withdraw the peremptory challenge, and continued with jury selection. Pet. at 22; Dkt. 7-3 at 197-98. Marshall's counsel did not address the matter further and the court moved on to the next potential juror. Dkt. 7-3 at 197-99.

With the jury apparently selected without additional complaint of errors, the trial commenced and lasted four days. During summation, Marshall's counsel was repeatedly reprimanded for stating the conclusions he had drawn rather than offering his argument as to why the jury should reach these conclusions. Pet. at 31-32; Dkt. 7-5 at 12-13, 16-17. Marshall's

2

counsel also referred to a "shooter" during his argument prompting the court to remind him that there was no evidence of shots being fired during either robbery. Dkt. 7-5 at 25, 29. On October 4, 2012, the jury found Marshall guilty on two counts of robbery in the first degree under N.Y. Penal law §160.15[4]. Dkt. 1 at 2, Dkt. 7 at 2. On October 25, 2012, he was sentenced to consecutive prison terms of eight years, with five years of post-release supervision. *Id.*

Petitioner appealed the conviction to the Appellate Division, Second Department, advancing three claims. Dkt. 7 at 3. First, Marshall argued that the trial court violated his right to choose a jury by "arbitrarily denying defense counsel's request to withdraw peremptory challenge, even though the request was made before the court considered another juror." *Id.* Second, he claimed that the trial court "abdicated its judicial function by, (A) delegating its duty to a clerk and failing to supervise communications with the prospective jurors and (B) allowing prospective jurors to opt out at will from serving on the jury due to their own perceived 'hardship.'" *Id.* Sharpening the focus of this claim, Marshall contended that the court's decision to allow prospective jurors to speak to the clerk about the possibility of being excused from the trial was an improper delegation of judicial responsibility. *Id.* Lastly, he claimed he was denied his Sixth Amendment right to effective assistance of counsel, because his attorney "(A) advanced an untenable defense that intentionally opened the door to a harmful and otherwise improper counter argument that the jury could commingle evidence and (B) committed several related and additional errors, exposing counsel's lack of preparation and understanding of the facts and the law." *Id.*

The Second Department unanimously affirmed petitioner's judgment of conviction on September 16, 2015. *People v. Marshall*, 131 A.D.3d 1074, 17 N.Y.S.3d 140 (2d Dep't 2015). It found that while the trial court committed an improvident exercise of its discretion when

3

denying petitioner's request to withdraw the peremptory challenge, the denial was harmless error. *Id.* at 1075-76. The court concluded, substantively, that petitioner had received effective assistance of counsel. It also found, though, that petitioner's delegation claims were unpreserved for appellate review. *Id.* at 1076.

Marshall requested leave to appeal to the Court of Appeals by letters dated October 6 and 30, 2015. Dkt. 7 at 4. His leave application was denied on November 24, 2015. *People v. Marshall*, 26 N.Y.3d 1041, 43 N.E.3d 380, 22 N.Y.S. 3d 170 (2015). In the instant timely petition filed on October 3, 2016, for federal habeas corpus, Marshall raises all three claims he sought to present on direct appeal. Dkt. 1 at 6-9.

Standard of Review

Post-conviction federal *habeas* relief is governed by the overarching reach of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"). Generally, AEDPA gives deference to state courts applying controlling precedents of the U.S. Supreme Court to resolve federal constitutional claims raised by state prisoners. *See Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). This deferential review is accorded to any state court decision disposing of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 98-99, 131 S. Ct. 770, 783-84, 178 L. Ed. 2d 624 (2011).

That such deference is to be shown is hardly surprising. Circumscription of the power of district courts to grant *habeas* relief to state prisoners is exactly what Congress intended. "Section 2254(d) reflects the view [of Congress] that *habeas corpus* is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."

4

*Harrington*, 562 U.S. at 102-03 (citation and internal quotations omitted).  With its mission targeting extreme malfunctions in a subject state criminal proceeding, AEDPA review, for the most part, "demands that state-court decisions be given the benefit of the doubt."  *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011) (citation omitted).  In any event, where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'"  *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

Given these ground rules, *habeas* jurisprudence is tightly confined.  In that regard, a state court decision is "contrary to clearly established federal law," if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts.  *Williams v. Taylor*, 529 U.S. 362, 405-6, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000).  A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  Even erroneous state court decisions, then, if deemed reasonable, will survive *habeas* review.  *Id.* at 411.

But, there is a caution: the state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted.  *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (quoting *Harrington*, 562 U.S. at 103).  Still, as the Supreme Court has underscored, if the AEDPA "standard is difficult to meet [before federal *habeas* relief may be awarded]– and it is – that is because it was meant to be."  *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013) (citation and internal quotations omitted).

Moreover, even if the district court is convinced to a moral certainty that the state court erroneously determined an issue purely of state law, the district court is without power to grant habeas relief to rectify it. *See* 28 U.S.C. § 2254(d)(1); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.").

## Discussion

### I. The Lost Peremptory Challenge

As it was on his direct appeal to the Appellate Division, Marshall's first contention here is the state trial court's refusal to permit him to withdraw a peremptory challenge was error and is a basis for *habeas* relief. Dkt. 7 at 6. What is missing, however, is any analytical basis that this claimed error established a cognizable violation of his federal constitutional rights. *Id*. For example, Marshall does not allege that the jury that was selected was biased, or that peremptory challenges were used to racially discriminate. Instead, he baldly asks the Court to join him in simply concluding that he was denied the constitutional right to "a jury in whose selection he had a voice." Pet. at 35. Much more than that, and much more than the record would support, is required. Federal *habeas* relief is inapplicable to state court decisions absent a constitutional violation. *Estelle*, 502 U.S. at 67-68. The fact that Marshall relies exclusively on New York law and the New York State Constitution to buttress his argument exposes it for what it is—a request to override the state court decision on a state law claim.

While petitioner makes fleeting references to the Fourteenth Amendment, the right to trial by jury, and the right to a fair trial, these references do not transform the state-law claim into a federal constitutional violation. *Estelle*, 502 U.S. at 67–68; *see also Smith v. Phillips*, 455 U.S. 209, 221, 102 S. Ct. 940, 948, 71 L. Ed. 2d 78 (1982) (holding that non-constitutional claims are an insufficient basis for federal *habeas* relief). In fact, the baselessness of petitioner's claim as a

6

federal constitutional violation is exemplified by the Supreme Court's rejection of its underlying premise when it held that "there is no freestanding constitutional right to peremptory challenges." *Rivera v. Illinois*, 556 U.S. 148, 157, 129 S. Ct. 1446, 1453, 173 L. Ed. 2d 320 (2009). As a result, even when a trial court erroneously denies the use of a peremptory challenge, "the loss of [the] peremptory challenge. . .is not a matter of federal constitutional concern." *Id*. In the absence of a federal constitutional claim, and without regard to whether the state courts properly resolved state law issues, the issuance of the writ is not supported and the claim is dismissed.

II. <u>Delegation of Judicial Authority</u>

Marshall also alleges that the trial court's jury selection procedures improperly delegated judicial duties to the court clerk and arbitrarily eliminated potentially competent jurors. Pet. 39. Specifically, he contends that it was improper for the Court to excuse jurors after a cursory inquiry into their hardship claims and to permit the clerk to determine whether jurors would be excused from duty or assigned to another trial. *Id*. The Appellate Division rejected petitioner's abdication claims as unpreserved for appellate review and, even if preserved, without merit. *Marshall*, 131 A.D.3d at 1076. On this record, those findings are fatal.

Federal habeas relief is barred when a state prisoner has defaulted on a claim by failing to comply with "an independent and adequate state procedural rule," *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640 (1991), *holding modified by Martinez v. Ryan,* 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), and the last state court rendering judgment "clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989) (internal quotations omitted). Independent and adequate state procedural rules include violations of a state's claim

preservation rule, such as New York's rule. *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007). New York's preservation rule has been found to be both independent and adequate, and failure to comply with the rule is sufficient to bar a federal *habeas* claim. *Id*. Moreover, to button it up succinctly, New York's preservation rule applies to jury prescreening procedures such as those implicated by petitioner's claims. *People v. King*, 27 N.Y. 3d. 147, 150 (2016) (preservation rule applied to claims judge improperly delegated duties during hardship questioning); *Gajadhar v. Ercole*, No. 09 Civ. 1964 (LBS), 2010 WL 3036498, at *4-5 (S.D.N.Y. Aug. 4, 2010).

Here, as in *Gajadhar*, the Appellate Division found petitioner's abdication of judicial responsibility claim procedurally barred, specifically applying New York's preservation rule. *Marshall*, 131 A.D.3d at 1076 (holding petitioner "failed to preserve for appellate review his" delegation claims). It was a dispositive procedural default here as well. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991). Making no showing of explaining the factors to find extraordinary cause or prejudice to excuse the procedural default, he cannot claw back his claim on that basis. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001); *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994). The clear finding by the Second Department that Marshall had failed to preserve his improper delegation of judicial responsibility as it relates to the Clerk's dismissal of prospective jurors is a complete bar to federal habeas review. The claim is dismissed on that ground.[3]

---

[3] Cut from the same cloth, Petitioner also asserts a constitutional violation based on the trial court's cursory inquiry into prospective jurors' hardship claims. Dkt. 1 at 39. The Appellate Division rejected petitioner's cursory inquiry claims as unpreserved for appellate review. *Marshall*, 131 A.D.3d at 1076. Like the delegation claim, these claims are procedurally barred here and are dismissed on the same reasoning.

III.    <u>Ineffective Assistance of Counsel</u>

Petitioner's final claim is that he was denied the effective assistance of counsel. Dkt. 1 at 43. Petitioner primarily contends that counsel was ineffective because of a strategic choice made regarding the connection between the two charged robberies. Marshall complains that there was no reasonable strategic justification for argument to the jury that reasonable doubt about his involvement in one robbery could itself raise reasonable doubt about his alleged involvement in the other. *Id.* Petitioner, more than mystifyingly, argues that this strategy somehow facilitated the prosecution's argument that to leverage proof as to Marshall's guilt on one robbery was to prove his guilt in the second robbery. *Id.*

To establish a federal habeas ineffective assistance of counsel claim, petitioner must show (1) "that counsel's performance was deficient" and (2) that the deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Both elements must be satisfied to reverse a conviction. *Id*. Performance is deficient when it is so inadequate "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Conversely, an attorney satisfies the Sixth Amendment requirements by providing "reasonably effective assistance" considering all of the circumstances. *Trapnell v. United States*, 725 F.2d 149, 151-52 (2d Cir. 1983). Courts must assess attorney performance with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Attorney performance on the first prong is assessed "at the time of counsel's conduct," *id*. at 659, without the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844, 122 L. Ed. 2d 180 (1993). Acts or omissions by counsel which "might be considered sound

9

trial strategy" do not constitute ineffective assistance. *United States. v. Javino*, 960 F.2d 1137, 1145 (2d Cir. 1992) (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). A deficient performance is only prejudicial when there is "a reasonable probability that the outcome of the proceeding would have been different" absent counsel's error or action. *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994). Unlike the deficiency prong, the prejudice prong "may be made with the benefit of hindsight." *Id*.

Clearly, under New York law, where charges of two or more incidents are tried together, a defendant may seek a jury instruction that "the incidents were distinct and separate, and that the evidence of guilt as to one of the incidents may not be considered as evidence of guilt as to the other incident." *People v. Graham*, 601 N.Y.S.2d 140, 150 (2d Dep't 1993). Nevertheless, as was the apparent plan long before there was any defined strategy, the prosecution was free to offer proof and argue that, as a part of a crime spree, by pointing out similarities between incidents, including that the robberies occurred two days apart within blocks of each other and each involved three young men and a woman walking alone in which the young men pointed a gun at the woman, took her bag, and ran away. Dkt. 1 at 23-24, 26-27. In short, the defense strategy was to leverage a lack of prosecution proof in one robbery as a lack of proof as to the other.

Indeed, here Marshall's counsel was able to demonstrate inconsistencies between St. Bernard's testimony and Detective Brunetti's. Dkt. 7-4 at 77, 81-84, 184, 201. Beyond that, counsel also secured a jury instruction that if the jury concluded petitioner had been involved in one robbery "that fact standing alone is not evidence that the defendant . . . has been correctly identified in the other incident," Dkt. 7-5 at 63, limiting the potential risk of the prosecution's argument that the similarities between the incidents show that they were part of a spree including

10

Marshall. At any rate, the issue was argued and presented to the Appellate Division and the judgment of the state court is entitled to deference. Petitioner's burden at that point is the heaviest. Clear and convincing evidence must be produced. Marshall offers none. Marshall's claim of ineffective assistance of counsel cannot succeed and the writ cannot issue.

## Conclusion

For the foregoing reasons, a writ of *habeas corpus* is denied, and the petition is dismissed. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of the Memorandum and Order to petitioner, to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       July 11, 2020

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge